Filed 9/9/22 In re D.S. CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.S., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078590 |
| Plaintiff and Respondent, | (Super.Ct.No. J281854) |
| v. | OPINION |
| D.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Lynn M. Poncin, Judge. Conditionally reversed with directions.

Elizabeth D. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Kaleigh Ragon, Deputy County Counsel, for Plaintiff and Respondent.

1

D.S. (father) appeals from findings and orders made at a postpermanency planning hearing involving his son, D.S. (the child). Father claims the juvenile court erred in finding the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et. seq.) (ICWA) did not apply. He contends the matter must be conditionally reversed and remanded because the juvenile court, as well as the San Bernardino County Children and Family Services (CFS), failed to discharge their duty of inquiry under ICWA and related California law (Welf. & Inst. Code,[1] § 224.2). We agree and conditionally reverse.

PROCEDURAL BACKGROUND

CFS filed a section 300 petition on July 30, 2019, as to the child, who was 14 years old at the time. The petition alleged that he came within subdivisions (b) (failure to protect) and (g) (no provision for support). The petition specifically alleged that the child's mother, V.S. (mother),[2] left the child in father's care, and father failed to provide proper supervision for him. It also alleged that mother and father (the parents) had a prior dependency case in 2017-2018, in which they failed to reunify. The petition further alleged that father was currently hospitalized with no known release date, and mother's whereabouts were unknown.

The social worker filed a detention report stating that on July 26, 2019, CFS received an immediate response referral alleging general neglect to the child and his brother (the

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise noted.

[2] Mother is not a party to this appeal.

2

children).[3]  The referring party alleged that on July 18, 2019, father was taken by ambulance and admitted to the hospital, and the children were left in a back house to care for themselves.  The property belonged to C.F. and J.F. (the paternal aunt and uncle), who lived in the front house on the property, and who were believed to be the caregivers for father, as he had been bedridden for approximately two years.  Father's discharge date was unknown.

On July 27, 2019, the social worker met with father, who was hospitalized for congestive heart failure.  Father stated he had Navajo ancestry and believed mother had Cherokee ancestry.

The court held a detention hearing on July 31, 2019.  The parents were not present, but the child was.  The court asked the child if he had any Native American ancestry, and he said he thought he had Cherokee and Sioux on mother's side.  The court detained the child.  It also ordered both mother and father to complete a parental notification of Indian status form (ICWA-020).

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on or around August 16, 2019, recommending that the court sustain the petition, remove the child from the parents, and order reunification services for father, but not mother.  The social worker reported that on August 13, 2019, father denied Native American ancestry, but thought that maybe mother had some ancestry.  However, on August 15, 2019, mother denied Native American ancestry.  She stated that in her last case, no ancestry was found, so she was not claiming it

---

[3]  The child's brother is not a subject of this appeal.

now. On August 19, 2019, mother filled out a "Family Find and ICWA Inquiry" form (CFS 030A), stating she had no Native American ancestry. In the portion of the form stating, "Additional Family Contact Information," mother listed the names and phone numbers of three friends.

The court held a jurisdiction/disposition hearing on August 21, 2019. Father was not present but was represented by counsel. Mother made her first appearance in this case. The court noted that mother indicated she had no known Indian ancestry and asked her to confirm. She said, "That's what I was told at the last hearing when I was last here." The court responded, "Well, I don't know if you have Indian ancestry. Do you?" Mother said, "Not that I'm aware of." She submitted an ICWA-020 Parental Notification of Indian Status form stating she had no known Indian ancestry. Mother's counsel set the matter for contest. The court set a pretrial settlement conference for September 12, 2019, and set the matter for trial on September 17, 2019.

On September 12, 2019, the social worker filed a CFS 6.7 Additional Information to the Court memorandum (hereinafter, CFS 6.7 report), informing the court that the child moved into a foster home, and father remained at a rehabilitation center with an unknown discharge date. The social worker recommended reunification services for mother as well as numerous other findings, including that the court find the child did not come within the provisions of ICWA, that father was the presumed father, and that the child be removed from the parents' custody.

At the pretrial settlement conference on September 12, 2019, the court found that the child came within section 300, subdivisions (b) and (g), and sustained the petition. The

4

court found that ICWA did not apply in this case. It then declared the child a dependent, removed him from the parents' custody, placed him in CFS's custody and control, and ordered reunification services for the parents.

*Six-month Status Review*

The social worker filed a six-month status review report on March 4, 2020, and recommended that the parents' services be continued. The social worker continued to report that ICWA did not apply.

The court held a six-month review hearing on March 12, 2020, and set the matter for contest at the request of both parents. The contested hearing was continued multiple times.

The contested six-month review hearing was held on July 15, 2020. The court adopted the recommended findings and orders.

*Twelve-month Status Review*

The social worker filed a 12-month status review report and recommended that the court terminate reunification services and order the plan of placement in foster care with a permanent plan of legal guardianship. The social worker again noted that ICWA did not apply.

The court held a 12-month review hearing on August 28, 2020, and adopted the recommended findings and orders. It then set a permanency planning review (PPR) hearing.

*PPR*

The social worker filed a PPR status review report dated September 1, 2021, and recommended the permanent plan for the child to be another planned permanent living arrangement (PPLA). The social worker continued to report that ICWA did not apply.

The court held a PPR hearing on September 1, 2021, and father did not appear but was represented by counsel. The court continued the child as a dependent, maintained him in the same foster home, and granted father supervised visitation.

On February 22, 2022, the social worker filed a PPR status review report and continued to report that ICWA did not apply. The social worker recommended the permanent plan for the child to be another PPLA.

The court held a PPR hearing on March 1, 2022, adopted the findings and orders stated in the status review report, and set a PPR hearing for September 1, 2022.

## DISCUSSION

Father claims the juvenile court's ICWA finding must be reversed and the matter remanded to permit additional ICWA compliance. He specifically contends that CFS failed to discharge its initial duty of inquiry to contact extended family members to inquire of the child's possible status as an Indian child. We agree.

A. *Applicable Law*

ICWA establishes minimum federal standards that state courts are required to follow before they may lawfully place an Indian child in foster care or terminate parental rights to an Indian child. (25 U.S.C. §§ 1902, 1912(a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.) ICWA requires that notice of the state court proceedings be given to Indian tribes "where the court knows or has reason to know that an Indian child is involved, . . ." (25 U.S.C. § 1912(a); see *Isaiah W.*, *supra*, 1 Cal.5th at p. 8; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740-741 (*Benjamin M.*).) ICWA's notice requirement, which is also codified in California law (§ 224.3), "enables a tribe to

6

determine whether the child is an Indian child and, if so, whether to intervene" in the state court proceeding or exercise its own jurisdiction in the matter. (*Isaiah W.*, at p. 5; see *In re Y.W.* (2021) 70 Cal.App.5th 542, 551 (*Y.W.*).) The tribe has the right to determine whether the child is eligible for membership and, thus, whether the child is an Indian child. (*In re K.T.* (2022) 76 Cal.App.5th 732, 742.)

Although "ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child," federal regulations implementing ICWA "require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882-883 (*Austin J.*); see 25 C.F.R. § 23.107(a) (2022).)

California law imposes a similar duty of inquiry on courts. The juvenile court and CFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, *supra*, 1 Cal.5th at pp. 9, 11-12.) The Welfare and Institutions Code "creates three distinct duties regarding ICWA in dependency proceedings. First, from the [department's] initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [department] 'shall make further inquiry regarding the possible Indian status

7

of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; see § 224.2.) The agency's duty of inquiry includes asking "extended family members" whether they know or have reason to know that the child is an Indian child. (§ 224.2, subd. (b).)

If the juvenile court finds that "proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) A juvenile court's finding that ICWA does not apply includes an implicit finding that social workers fulfilled their duty of inquiry. (*Austin J.*, *supra*, 47 Cal.App.5th at p. 885.) "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314; *Austin J.*, at p. 885 [implicit finding, reviewed for substantial evidence, that social workers fulfilled their duty of inquiry].)

B. *The Juvenile Court's ICWA Finding Is Not Supported by Substantial Evidence*

We first observe that father does not argue the juvenile court erred in failing to question him or mother about potential Indian ancestry. The social worker interviewed

father and mother, and both denied any Indian ancestry.[4] The focus of father's claim is that CFS failed in its initial inquiry under section 224.2 since the social worker did not make any effort to contact his or mother's extended family members—specifically, the paternal aunt and uncle and the three maternal relatives named on mother's Family Find and ICWA Inquiry Form—about Indian ancestry. As to the alleged three maternal relatives, respondent points out that mother's Family Find and ICWA Inquiry Form identified three *friends*; thus, there were no relatives to contact as to mother's potential Indian ancestry. In his reply brief, father concedes that he incorrectly described the friends as family. As to the paternal aunt and uncle, nothing in the record suggests CFS inquired of them about the child's potential status as an Indian child. The record indicates that CFS had the ability to communicate with these extended family members, as CFS reported they lived on the same property as father and the child, and they were believed to be father's caregivers. Such record cannot support a finding that CFS discharged its initial duty of inquiry under ICWA.

Respondent concedes the record does not indicate the paternal aunt and uncle were ever asked about the child's possible Indian ancestry, but argues the error was harmless, as father denied Indian ancestry and does not argue otherwise on appeal; further, there is nothing to suggest the relatives would have any valuable information about the child's

---

**4** Although father initially informed the social worker he had Navajo ancestry, approximately two weeks later, he stated he did not have any Indian ancestry. Father points out, in his reply brief, that mother informed the court that she did not believe she had Native American ancestry since "she was told" that in a prior dependency case, and he asserts that "her belief based on what she was told on a prior case was not dispositive." To the extent father is disputing that mother denied she had Native American ancestry, the record clearly shows that on August 15, 2019, mother denied Native American ancestry and stated that in her last case, no ancestry was found, so she was not claiming it now.

possible Indian status. We disagree that the error was harmless. "[S]ection 224.2, subdivision (b), imposes [an obligation] on the Department to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431 (*Antonio R.*).) "[T]he point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child [is] to obtain information the parent may not have." (*Y.W.*, *supra*, 70 Cal.App.5th at p. 556; see also, *id.* at p. 554 ["parents may not know their possible relationship with or connection to an Indian tribe"].)

C. *The Record Does Not Permit Us to Conclude CFS's Error Was Harmless*

We acknowledge that the standard of prejudice requiring reversal in cases involving ICWA is unsettled in the Courts of Appeal. (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 433 ["Courts of Appeal are divided as to whether a parent must make an affirmative showing of prejudice to support reversal . . . ."].) However, this court recently adopted a standard of prejudice in *Benjamin M.*, *supra*, 70 Cal.App.5th 735, that rejects both an automatic rule of reversal or a rule that places the burden squarely on the parents to show the likelihood of obtaining a more favorable result. (*Id.* at pp. 743-745.) Instead, we explained that reversal is required "where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.)[5] In considering the prejudicial effect of a social services agency's failure to discharge its duty

_____

[5] In adopting this standard of prejudice, this court expressly disagreed with the standard articulated in *In re A C.* (2021) 65 Cal.App.5th 1060. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745.) Accordingly, we find CFS's reliance on that case unpersuasive.

to inquire under ICWA, this court has repeatedly held that the failure to comply with an initial duty of inquiry is deemed prejudicial in the absence of information in the record to suggest otherwise. (*In re K.R.* (2018) 20 Cal.App.5th 701, 709; *In re N.G.* (2018) 27 Cal.App.5th 474, 484; *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745.) As this court has previously explained: "[W]here the record does not show what, if any, efforts the agency made to discharge its duty of inquiry [citations], . . . the burden of making an adequate record demonstrating the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements must fall squarely and affirmatively on the court and the agency. . . . [A]s a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible." (*In re N.G.*, at p. 484.) This remains true even under our recently articulated standard of prejudice in *Benjamin M.* (*Benjamin M.*, at p. 745 [failure to make an initial inquiry of an extended family member is prejudicial because, "[w]hile we cannot know how [an extended family member] would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue."].)

Here, the record is devoid of any indication that CFS made efforts to contact the paternal aunt and uncle, or any other extended relatives, for the purpose of making an initial ICWA inquiry. Nor does the record suggest this was merely a failure by CFS to adequately document its efforts, as CFS's reports contained no substantive information related to ICWA. Given such a silent record, under the general rule we expressed in *In re N.G.*, *supra*, 27 Cal.App.5th 474, and our articulation of what constitutes prejudicial error in *Benjamin M.*, supra, 70 Cal.App.5th 735, we cannot conclude CFS's failure to comply with its initial duty of inquiry under the ICWA was harmless.

11

## DISPOSITION

The finding that ICWA did not apply is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and of Welfare and Institutions Code sections 224.2 and 224.3. If, after completing the initial inquiry, neither CFS nor the juvenile court has reason to believe or reason to know the child is an Indian child, the finding that ICWA did not apply shall be reinstated. If, however, CFS or the juvenile court discovers a reason to believe that the child is an Indian child, the juvenile court shall proceed as required under ICWA and related California statutes.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

CODRINGTON _____
Acting P. J.

RAPHAEL _____
J.

12